UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

JOSEPH P. LOPEZ,

          Debtor.

_____/

Case No. DG 18-03292
Hon. Scott W. Dales
Chapter 7

PNC EQUIPMENT FINANCE, LLC,

          Plaintiff,

v.

JOSEPH P. LOPEZ,

          Defendant.

_____/

Adversary Pro. No. 19-80049

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
               Chief United States Bankruptcy Judge

On June 9, 2021, the court granted the motion of Defendant Joseph P. Lopez (the "Defendant" or "Mr. Lopez") for summary judgment, declaring his debt to Plaintiff PNC Equipment Finance, LLC ("PNCEF" or "Plaintiff") discharged notwithstanding the purported exception under 11 U.S.C. § 523(a)(2)(A). On June 23, 2021, PNCEF timely filed a notice of appeal and a motion to reconsider the summary judgment (the "Reconsideration Motion," ECF No. 78). The Defendant filed a response on July 8, 2021 (ECF No. 82, the "Response"), and PNCEF filed its reply on July 15, 2021 (ECF No. 83, the "Reply").[1]

---

[1] A similar recitation describes the filings in a companion case involving Mr. Lopez's former business partner, *PNC Equipment Finance, LLC. v. Darin*, Adv. No. 19-80051.

The court has reviewed the Reconsideration Motion, the Response, and the Reply, and will deny the Reconsideration Motion based upon the well-established standards governing such motions. *See In re Solomon*, 436 B.R. 451, 453 (Bankr. W.D. Mich. 2010); *In re Ying Ly*, 350 B.R. 757 (Bankr. W.D. Mich. 2006) (A party seeking reconsideration must establish a clear error of law, newly discovered evidence, an intervening change in controlling law, or the need to prevent manifest injustice).

In its Reconsideration Motion, PNCEF simply reiterates oral and written arguments the court previously rejected in the Memorandum of Decision and Order dated June 9, 2021 (ECF No. 75, the "MDO") (reported as *PNC Equipment Finance LLC v. Darin (In re Darin)*, Slip Op. Adv. No. 19-80051, 2021 WL 2389770 (Bankr. W.D. Mich. June 9, 2021)). For example, the court previously considered the possibility that PNCEF lacked control over the deposit accounts of JDJ Hospitality, LLC ("JDJ"), concluding that even in the absence of a control agreement PNCEF may be automatically perfected in proceeds of its other collateral. The court found -- based on authority that PNCEF itself submitted -- that PNCEF must offer "proof that assets were available for transfer that were not encumbered by a valid lien." *See* MDO at p. 15 (citing *Steinberg v. Young*, Slip Op. No. 09-11836, 2010 WL 3190849, at *6 (E.D. Mich. Aug. 11, 2010)).

PNCEF's recent though untimely submission of a deposit account agreement (offered to refute the court's suggestion that a commercial deposit account agreement might qualify as a "control agreement" under M.C.L. § 440.9104(1)(a)) misses the point. Indeed, the court's decision to enter summary judgment did not depend on the inference that PNCEF had control of the deposit account, but instead on the fact that PNCEF had not established as a matter of fact that its security interest in deposit accounts was not perfected by control or by automatic perfection in the accounts as proceeds of other collateral in which PNCEF repeatedly claimed it held perfected security

interests.[2]  Even if the deposit account agreement could qualify as newly discovered evidence,[3] it would not have changed the result then, and it does not move the court now. The court found that PNCEF, as the party with the burden of proof, did not meet its summary judgment burden under Rule 56.

PNCEF next argues as a matter of law that JDJ's deposit accounts qualified as "assets" that could be the subject of a "transfer" under Michigan's Uniform Voidable Transfer Act ("MUVTA") even if PNCEF had a perfected security interest in the deposit accounts, because its security interest would not qualify as a "valid lien" in the deposit accounts.  This is so, according to PNCEF, because a "lien creditor" is a "transferee of funds" who takes free of security interests in a deposit account.  PNCEF cites M.C.L. § 440.9332(2)[4] and an unreported decision of an out-of-jurisdiction court applying California law in support.  *See Stierwalt v. Associated Third Party Administrators*, Slip Op. Case No. 16-mc-80059-EMC, 2016 WL 2996936 (N.D. Calif. May 25, 2016).  *Stierwalt* held that a lien creditor qualifies as a transferee of funds from a deposit account and, in the absence of collusion,[5] takes free of a perfected security interest in the deposit account.

Michigan law, however, provides that a lien creditor who garnishes a deposit account does not immediately obtain any "funds" at the moment it serves the garnishment writ, only an execution lien in the deposit account, pending the outcome of the post-judgment proceedings.  *Michigan*

---

[2] *See* MDO at pp. 13-14 ("The court is not inferring that PNC Bank's depository agreement included such a provision (though it might have) but only that the Plaintiff who has throughout this proceeding . . . asserted a perfected security interest in the property transferred ought to have marshalled some evidence to contradict its earlier positions . . .") and p. 16 ("Even if the evidence at trial might establish that PNCEF did not benefit from a control agreement, PNCEF likely enjoyed automatic perfection of its security interest in the restaurant's deposit accounts under M.C.L. § 440.9315(3) and (4), and after discovery it should have been able to make a *prima facie* showing, in the words of the *Steinberg* court, 'that assets were available for transfer that were not encumbered by a valid lien.'").

[3] PNCEF obviously knew that a deposit account agreement existed, but did not bother to locate it after the court signaled the importance of the issue in its Rule 56(f) notice, at least not until after the court entered judgment.

[4] Under this section, "[a] transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party." M.C.L. § 440.9332(2).

[5] PNCEF would have a Herculean task establishing the absence of collusion given its theory of the case.

*Tractor & Mach. Co. v. Elsey*, 549 N.W.2d 27, 29 (Mich. App. 1996) ("Michigan follows the general rule that a garnishment lien attaches upon service of the writ."); M.C.R. 3.101 (Garnishment After Judgment). Stated differently, a lien creditor is not a "transferee of funds" under M.C.L. § 440.9332(2) when its garnishment lien attaches, just as an ordinary secured creditor is not a "transferee of funds" when its security interest attaches: both hold an interest in the account, not the funds themselves. Indeed, a deposit account in Michigan simply represents the depository institution's debt to its depositor. *Riverview Co-op., Inc. v. First Nat. Bank & Trust Co.*, 337 N.W.2d 225, 229 (Mich. 1983) (the "relationship between a depositor and a bank … is one of debtor and creditor"). A garnishing creditor simply encumbers the depository's obligation to the depositor upon service of the writ. At that point in time, when the garnishment lien attaches, the depository institution must withhold the funds, not transfer them. *See* M.C.R. 3.101(I) (Withholding). And, the general theory of garnishment in Michigan is that a judgment creditor steps into the shoes of the judgment debtor,[6] not the shoes of the judgment debtor's transferee.

In the garnishment context, therefore, there is no transfer of funds until the time period for disclosure and objection expires under M.C.R. 3.101(J)(1). More specifically, Michigan's post-judgment procedures provide that the garnishing creditor does not immediately take the funds themselves from the deposit account, but instead must wait 28 days, during which the garnishee withholds the funds, makes disclosures, and waits for objections or instructions from the court. *See generally* M.C.R. 3.101. In the absence of objection or court ruling after the 28 day period, the garnishee then transfers funds from the garnished account to the lien creditor. This allows the

---

[6] *Frank v. ITT Commercial Fin. Corp. (In re Thompson Boat Co.)*, 230 B.R. 815, 829 (Bankr. E.D. Mich. 1995) ("A longstanding principle underlying the law of garnishment is that, in attempting to collect the obligation from the garnishee, the judgment creditor has no greater rights than would the judgment debtor."). The principle, of course, is subject to exceptions, including the UCC priority rule subordinating an *unperfected* security interest to the lien of a judgment creditor.

court, if called upon, to resolve disputed claims to the garnished funds, such as claims of the holder of a security interest or the execution lien of a judgment creditor, or even a joint owner of the account. *See Burke v. United American Acquisitions and Management, Inc.*, Slip Op. No. 290590, 2010 WL 3062222 (Mich. App. Aug. 5, 2010) (lien creditor takes subject to a perfected security interest in the deposit account). Assuming no objection during the 28-day period under Michigan's court rule, the garnishee liquidates its debt to the depositor by transferring funds to the garnishing creditor. The policy underlying M.C.L. § 440.9332 -- to protect the free flow of money and funds -- is not implicated before the money and funds start flowing.

PNCEF's "transferee of funds" argument also ignores the text of M.C.L. § 566.31(r) and the MUVTA definition of "valid lien," which invites a comparison between the rights of a holder of a security interest (such as PNCEF claimed to be) and "the holder of a judicial lien *subsequently obtained* by legal or equitable process or proceedings." M.C.L. § 566.31(r) (emphasis added). The word "obtained" signals that the comparison occurs at the time of the judicial lien's attachment -- when the judgment creditor obtains its lien -- not at enforcement (when it may eventually enjoy the rights of a "transferee of funds" under M.C.L. § 440.9332(2)). PNCEF puts the cart before the horse by swapping the concepts of attachment and enforcement, but in any event rehashes arguments the court previously rejected. *See* MDO at p. 17 (the MUVTA definition of "asset" [] necessarily considers the transferor's estate immediately before the transfer.").

If PNCEF were correct that a lien creditor becomes a "transferee of funds" upon service of the garnishment writ, there would be no point in providing a post-garnishment process for resolving disputed claims. Moreover, accepting PNCEF's argument under M.C.L. § 440.9332 would mean that a trustee in bankruptcy (included in the Uniform Commercial Code definition of "lien creditor") would take a debtor's property free of perfected security interests, marking a sea

change in our law. *See* M.C.L. § 440.9102(1)(yy) (defining lien creditor to include trustee in bankruptcy). The court prefers to let Michigan's state courts take the lead in expanding Michigan law beyond what the court regards as a generally accepted understanding of it.

Fairly read, PNCEF's arguments throughout this proceeding appear to be premised on its notion that Mr. Lopez, and his business partner, Mr. Darin, are bad actors whose misconduct in managing the assets of JDJ should not go unpunished. Whether PNCEF has appropriately sized-up Messrs. Lopez and Darin, however, is beside the point, because PNCEF proceeded on a fraud theory under MUVTA without establishing a *prima facie* case under that statute in response to a summary judgment motion and the court's own notice under Rule 56(f), despite several opportunities.

In the court's experience, secured creditors alleging misuse of their collateral as a basis for excepting a debt from discharge typically assert a conversion theory under 11 U.S.C. § 523(a)(6) rather than a fraud theory under § 523(a)(2)(A), but PNCEF stubbornly hewed to its fraud theory, (MDO at p. 2, n.3), and at no time sought to amend its complaint, assuming, *arguendo*, that such an amendment would relate back under Rule 15 and be timely under § 523(c). Whether PNCEF sought to establish a point of law under § 523(a)(2)(A) and *Husky Int'l Electronics v. Ritz*, 136 S. Ct. 1581 (2016), or simply did not perceive a claim under § 523(a)(6), the court cannot be sure, but a plaintiff is the master of its complaint and the case must rise or fall with the issues it frames through its pleadings, regardless of the scruples of its adversaries. Litigation is not a popularity contest.

The court has considered PNCEF's other arguments in support of reconsideration and finds them equally without merit.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Reconsideration Motion (ECF No. 78) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall enter a copy of this Memorandum of Decision and Order in the companion case, *PNC Equipment Finance, LLC. v. Darin*, Adv. No. 19-80051.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Martin L. Rogalski, Esq., and C. Randall Woolley, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated July 20, 2021**



Scott W. Dales
United States Bankruptcy Judge